IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | |
|---|---|
| VERONICA BRATU, § | |
| § | |
| Plaintiff, § | |
| § | |
| v. § | Civil Action No. 4:22-cv-0079-O-BP |
| § | |
| COMMISSIONER OF § | |
| SOCIAL SECURITY, § | |
| § | |
| Defendant. § | |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE**

Veronica Bratu ("Bratu") applied for Disability Insurance Benefits ("DIB") under the Social Security Act ("SSA"). The Commissioner denied her application, deciding she was not disabled. Bratu appeals. At issue is whether substantial evidence supports this decision when the administrative record lacks a medical opinion addressing how Bratu's alleged mental impairment, severe depression, affects her ability to work. Finding the decision unsupported by substantial evidence, the undersigned **RECOMMENDS** that United States District Judge Reed O'Connor **REVERSE** and **REMAND** this action for further proceedings.

**I.     BACKGROUND**

Fifty-five-year-old Bratu seeks disability benefits under Title II of the SSA, claiming disability status since February 7, 2019. Soc. Sec. Admin. R. (hereinafter "Tr."), ECF No. 16-1 at 191. Bratu claims she suffers from physical and mental disabilities, including chronic low back pain, cervical radiculopathy, carpel tunnel syndrome, sciatica, depression, panic attacks, and sleeping disorder. Tr. 93. The Commissioner decided she was not disabled and denied her application initially and upon reconsideration. Tr. 120-23; 125-27. Bratu requested a hearing

before an Administrative Law Judge ("ALJ") (Tr. 129-130), who conducted the hearing (Tr. 30-91) and affirmed in a twelve-page decision. Tr. 13-24. After the Appeals Council denied review (Tr. 1), Bratu filed this civil action seeking judicial review under 42 U.S.C. § 405(g). *See* ECF No. 1; *Higginbotham v. Barnhart*, 405 F.3d 332, 334 (5th Cir. 2005) (citing 20 C.F.R. § 416.1400(a)(5)) ("[T]he Commissioner's decision does not become final until after the Appeals Council makes its decision denying the claimant's request for review."). Bratu argues that (1) substantial evidence does not support the ALJ's evaluation of the medical opinions; and (2) the Acting Commissioner lacked statutory authority under the Federal Vacancies Reform Act ("FVRA") to ratify the appointments of SSA ALJs in 2018, including the ALJ in this case ECF No. 19 at 1.

## II.     STANDARD OF REVIEW

Title II of the SSA, 42 U.S.C. §§ 401-434, governs the disability insurance program. A person is disabled if she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." *Id.* § 423(d)(1)(A). To determine whether a claimant is disabled and thus entitled to DIB, the Commissioner employs a sequential five-step evaluation process. 20 C.F.R. § 404.1520.

First, the claimant must not be presently doing any substantial gainful activity. *Id.* § 404.1520(a)(4)(i). "Substantial gainful activity" is work that "[i]nvolves doing significant and productive physical or mental duties" and "[i]s done (or intended) for pay or profit." *Id.* § 404.1572. Second, the claimant must have a severe impairment or combination of impairments. *Id.* § 404.1520(a)(4)(ii); *see also Stone v. Heckler*, 752 F.2d 1099, 1100–03 (5th Cir. 1985). Third, disability exists if the impairment or combination of impairments meets or equals an impairment

listed in the SSA's statutory list. 20 C.F.R. § 404.1520(a)(4)(iii) (referencing 20 C.F.R. pt. 404, subpt. P, app. 1). Before proceeding to steps four and five, the Commissioner assesses a claimant's residual functional capacity ("RFC"), *id.* § 404.1520(a)(4), (e), which is "the most [a claimant] can still do despite [her] limitations." *Id.* § 404.1545(a)(1). Then fourth, if the claimant's medical status alone does not constitute a disability, the impairment or impairments must prevent the claimant from returning to her past relevant work ("PRW") given her RFC. *Id.* § 404.1520(a)(4)(iv). Fifth, the impairment must prevent the claimant from doing any work, considering the claimant's RFC, education, age, and work experience. *Id.* § 404.1520(a)(4)(v); *see also Crowley v. Apfel*, 197 F.3d 194, 197–98 (5th Cir. 1999). "The claimant bears the burden of showing she is disabled through the first four steps of the analysis; on the fifth, the Commissioner must show that there is other substantial work in the national economy that the claimant can perform." *See Audler v. Astrue*, 501 F.3d 446, 448 (5th Cir. 2007). If the Commissioner decides the claimant is or is not disabled at any step, then the process ends. 20 C.F.R. § 404.1520(a)(4); *Lovelace v. Bowen,* 813 F.3d 446, 448 (5th Cir. 2007).

Judicial review is limited to determining whether the Commissioner applied correct legal standards and whether substantial evidence in the record supports the Commissioner's decision. *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995); *Hollis*, 837 F.2d at 1382. "Substantial evidence is such relevant evidence as a reasonable mind might accept to support a conclusion." *Ripley v. Chater*, 67 F.3d 552, 555 (5th Cir. 1995) (quoting *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994)). "It is more than a mere scintilla and less than a preponderance." *Boyd v. Apfel*, 239 F.3d 698, 704 (5th Cir. 2001) (quoting *Harris v. Apfel*, 209 F.3d 413, 417 (5th Cir. 2000)). "A finding of no substantial evidence is appropriate only if no credible evidentiary choices or medical findings support the decision." *Id.* (quoting same). The Court may neither reweigh the evidence in

the record nor substitute its judgment for the Commissioner's, but it will carefully scrutinize the record to determine if substantial evidence is present. *Harris*, 209 F.3d at 417; *Hollis*, 837 F.2d at 1383. "Conflicts in the evidence are for the [Commissioner] and not the courts to resolve." *Brown v. Apfel*, 192 F.3d 492, 496 (5th Cir. 1999) (alteration in original) (quoting *Selders v. Sullivan*, 914 F.2d 614, 617 (5th Cir. 1990)).

### III.   ANALYSIS

The Commissioner, acting through the ALJ, completed the five-step evaluation process. *See* Tr. 15-24. First, the ALJ found Bratu has not engaged in substantial gainful activity since February 7, 2019. *Id.* at 15. Second, she found seven medically severe impairments: degenerative disc disease of the lumbar and cervical spine; radiculopathy; bilateral carpal tunnel syndrome; osteoarthritis; hypermobility syndrome; sleep apnea; and depression. *Id.* Third, she identified no impairment or combination of impairments that qualify under the federal regulatory list. *Id.* at 16. She further analyzed the "paragraph B" and "paragraph C" criteria and found Bratu's mental impairment does not meet or medically equal the criteria of listing 12.04. 20 C.F.R. pt. 404, subpt. P, app. 1; *Id.* at 16-17. She then assessed Bratu's RFC:

> After careful consideration of the entire record, the undersigned finds that the claimant has the [RFC] to perform light work defined in 20 C.F.R. § 404.1567(b) except she can frequently stoop; occasionally kneel, crouch, and crawl; and occasionally climb ramps and stairs. She can never climb ladders, ropes, and scaffolds. She can occasionally reach overhead with the left (non-dominant) upper extremity and can frequently reach in all other directions with the left (non-dominant) upper extremity. She can frequently reach and handle with the bilateral upper extremities. She can perform detailed but not complex tasks.

Tr. 17. Using this RFC determination and hearing testimony from a vocational expert ("VE"), the ALJ determined at step four that Bratu could perform PRW, specifically procurement, title, registration, and tax clerk positions. *Id.* at 22-23. The step four finding meant Bratu was ineligible for DIB because she was not disabled, a finding that ordinarily would terminate the ALJ's

4

evaluation. *Id.* at 23; *see Lovelace*, 813 F.2d at 58. However, the ALJ went further and addressed other jobs in the national economy that Bratu could perform, per step five. *Id.* at 23-24. She found Bratu could also perform other clerical positions, a huge category with approximately two million jobs in the United States. *Id.* Although Bratu has some additional limitations that do not allow her to perform the full range of light work, the ALJ considered her age, education and transferable work skills and found Bratu "not disabled" under the Medical-Vocational Rule 202.15 framework. *Id*. Bratu urges reversal because the ALJ: (A) lacked authority to decide her case, and (B) provided insufficient medical evidence to support her RFC evaluation.

### A. The Court should decline to rule on Bratu's first point.

Courts typically constrain their review of social security cases to determining whether the Commissioner applied correct legal standards and if substantial evidence supports the Commissioner's decision. *See Leggett*, 67 F.3d at 564. But the parties here briefed a distinct, threshold question: whether the ALJ lacked authority to decide Bratu's case, because the ALJ's authority was indirectly derived from an unconstitutional statute, 5 U.S.C. § 3445-46. *See* ECF No. 19 at 14-22; ECF No. 20 at 2-15; ECF No. 21 at 4-10.

Because the Court can resolve Bratu's appeal on her second point by applying the familiar "substantial evidence/correct legal standards" analysis, the Court need not resolve the parties' constitutional issue. *See Siler v. Louisville & N.R. Co.*, 213 U.S. 175, 193 (1909) ("Where a case in this court can be decided without reference to questions arising under the Federal Constitution, that course is usually pursued and is not departed from without important reasons."); *Burton v. United States*, 196 U.S. 283, 295 (1905) ("It is not the habit of the court to decide questions of a constitutional nature unless absolutely necessary to a decision of the case."). Even so, the Court recently rejected a similar argument relating to § 3446's alleged unconstitutionality, and so the Court would be inclined to rule in the Commissioner's favor on Bratu's first point were it to

5

consider the issue on its merits. *See Miller v. Comm'r*, No. 4:22-cv-01007-O-BP (N.D. Tex. filed September 14, 2022).

### B. The lack of substantial evidence supporting Bratu's RFC warrants remand.

Determining a claimant's RFC is the ALJ's responsibility. 20 C.F.R. § 404.1546(c); *Taylor v. Astrue*, 706 F.3d 600, 602–03 (5th Cir. 2012). Even if the ALJ errs, reversal is only proper if prejudice results. *See Morris v. Bowen*, 864 F.2d 333, 335 (5th Cir. 1988). Here, the ALJ's decision proceeded through the five-step evaluation process. Tr. 15-24. Before assessing Bratu's RFC, the ALJ considered whether Bratu's mental impairments met the "paragraph B" and "paragraph C" criteria. *Id.* at 16-17.

> To satisfy the "paragraph B" criteria, the mental impairment must result in at least one extreme or two marked limitations in a broad area of functioning which are: understanding, remembering, or applying information; interacting with others; concentrating, persisting, or maintaining pace; or adapting or managing themselves. An extreme limitation is the inability to function independently, appropriately, or effectively, and on a sustained basis. A marked limitation means functioning in this area independently, appropriately, effectively, and on a sustained basis is seriously limited.

Tr. 17. In this case, the evidence did not meet the "paragraph B" criteria. *Id.* The ALJ found only a mild limitation in all but one of the categories (concentrating, persisting, or maintaining pace), where she found a moderate limitation. *Id.* at 16-17. She cited Bratu's subjective comments and daily activities in support of her findings. *Id.* Because Bratu's mental impairments did not cause at least two "marked" limitations or one "extreme" limitation, the ALJ found "paragraph B" criteria had not been satisfied.

> The ALJ also considered the "paragraph C' criteria. *Id.*

> In this case, the evidence fails to establish the presence of the "paragraph C" criteria. There was no medically documented history of the existence of the disorder over a period of at least [two] years of medical treatment, documenting mental health therapy, psychosocial support, or a highly structured setting that was ongoing and that diminished the symptoms and signs of the claimant's mental disorder…or

6

> existence of marginal adjustment that the claimant has a minimal capacity to adapt the changes in [her] environment or to demands that were not already a part of the claimant's daily life.

*Id.* The ALJ determined Bratu's RFC after step three. *Id.* at 17. For the RFC, the ALJ analyzed two medical opinions of record, each provided by state agency medical consultants ("SAMC") who deemed Bratu's depression "non-severe." *See* Tr. 18–19. The ALJ found their opinions "persuasive," yet still determined that Bratu's depression was "severe." *Id.* at 22. The ALJ concluded that Bratu has, in part, the following RFC: "The claimant can perform detailed but not complex tasks." Tr. 17.

Bratu contends that substantial evidence does not support the ALJ's formulation of her "mental" RFC, which indicates an inability to perform complex tasks, because the ALJ did not rely on a medical opinion addressing how Bratu's depression affects her ability to work. ECF No. 19 at 12-13. She claims this was harmful error under *Williams v. Astrue,* 355 F. App'x 828, 832 (5th Cir. 2009) (citing *Ripley,* 67 F.3d at 552). The Commissioner contends because the SAMCs found no severe mental impairment was present, "there was no need for them to address whether an ability to perform detailed or complex work tasks was limited." ECF No. 20 at 19. The Commissioner argues the ALJ is solely responsible for determining a claimant's RFC, but a few sentences later also recognizes "she must consider opinion evidence along with the other evidence of record, both medical and non-medical, when making the RFC assessment." *Id.* at 17. Because *Williams* applied the Fifth Circuit's holding in *Ripley,* 67 F.3d at 552, the inquiry begins there.

        **1.**     ***Ripley* and the Northern District of Texas.**

Substantial evidence did not support the ALJ's RFC determination in *Ripley*, thus warranting remand, because the record "d[id] not clearly establish…the effect [the claimant's] condition had on his ability to work." *Ripley*, 67 F.3d at 557. The ALJ found Ripley not disabled

because he could perform sedentary work. *Id.* Even though the record included "a vast amount of medical evidence," including "reports discussing the extent of Ripley's injuries," there were no reports from "qualified medical experts" showing how Ripley's condition affected his ability to complete sedentary work. *Id.* at 557 & n.27.

The Court recognizes *Ripley*'s proposition that reversible error lies where the "record does not clearly establish" how an applicant's condition affects [her] ability to work. *Thornhill v. Colvin*, No. 3:14-cv-335-M, 2015 WL 232844, at *10 (N.D. Tex. Dec. 15, 2014) (quoting *Ripley*, 67 F.3d at 557), *rec. adopted*, 2015 WL 232844 (N.D. Tex. Jan. 16, 2015). Like Bratu, the claimant in *Thornhill* alleged disability from depression, but was found "not disabled." *Id.* at *1. Finding the claimant's symptoms mild, the ALJ determined the claimant was less limited than did a registered nurse, physician, and licensed professional counselor, yet more limited than did two SAMCs. *Id.* at *9. The RFC determination reflected an ability to work, but was erroneous to the extent it "added mental limitations . . . to accommodate for [the claimant's] mild symptoms." *Id.* at *10. Even though adding mental limitations suggested the ALJ was "simply giving [the claimant] the benefit of the doubt as to what limitations might apply," the only supporting evidence was progress notes that did not address work ability. *Id.* While the ALJ could depart from the relevant medical opinions, it then "became incumbent upon the ALJ to obtain an expert medical opinion" to fill the gap. *Id.* (citing *Ripley*, 67 F.3d at 557).

The Court again found reversible error where an ALJ determined a mental RFC after rejecting the only medical opinions that could support the determination. *Fitzpatrick v. Colvin*, No. 3:15-cv-3202-D, 2016 WL 1258477, at *7–8 (N.D. Tex. Mar. 31, 2016). Two SAMCs found the claimant's alleged mental impairment not severe, creating only mild issues with daily living; social functioning; and "maintaining concentration, persistence, or pace." *Id.* at *7. The ALJ rejected

their opinions and found the claimant "more limited." *Id.* at *7 & n.6. The RFC provided that the claimant could function in a "simple work environment" featuring "simple routine instructions" and "occasional contact with coworkers and supervisors." *Id.* at *7. But only the rejected consultants' opinions supported such an RFC. *Id.* at *8. Applying *Ripley* and *Thornhill*, the Court construed the ALJ's RFC determination as an improper attempt to address the claimant's mental impairments without relying on a supporting medical opinion. *Id.* at *7–8.

In *Ripley*, *Thornhill*, and *Fitzpatrick*, the ALJ's failure to obtain a medical opinion addressing how the respective claimants' impairments affected their ability to work warranted reversal and remand of the case. *See Ripley*, 67 F.3d at 557–58; *Thornhill*, 2015 WL 232844, at *11; and *Fitzpatrick*, 2016 WL 1258477, at *12. The undersigned's recommendations in *Alexander v. Saul*, No. 7:19-cv-00127-M-BP, 2020 WL 4573847 (N.D. Tex. July 9, 2020), *rec. adopted*, 2020 WL 4569034 (N.D. Tex. Aug. 7, 2020) and *Bowles v. Comm'r of Soc. Sec.*, No. 7:20-cv-00112-O-BP, 2021 WL 7451148, at *3 (N.D. Tex. Oct. 19, 2021), *rec. adopted*, 2022 WL 768546 (N.D. Tex. Mar. 14, 2022) reached similar conclusions.

### 2. There is no substantial evidence to support Bratu's mental impairment finding.

The record does not clearly establish the effects of Bratu's mental impairment, severe depression, on her ability to work. Just as in *Fitzpatrick* and *Thornhill*, the ALJ departed from the SAMCs' opinions (Tr. 97, 111) and determined Bratu's depression was more limited and "severe." Tr. 15. The ALJ cited no other medical opinions in determining Bratu's RFC. As in *Fitzpatrick*, the SAMCs' opinions support the mental RFC determination to some extent. Tr. 97, 111. Each acknowledges that Bratu had "mild" issues involving her abilities to "concentrate, persist, or maintain pace" and "interact with others." *Id*. They did not discuss Bratu's PRW, but determined any PRW discussion was immaterial because "all potentially applicable Medical-Vocational

Guidelines would direct a finding of 'not disabled' given the individual's age, education, and RFC…concluding the individual can adjust to other work." *Id.* at 100, 115. While the ALJ was free to reject the only medical opinions in the record, she then had to obtain a medical opinion supporting which work tasks Bratu could perform despite her depression. *Fitzpatrick*, 2016 WL 1258477, at *7 (applying *Thornhill*, 2015 WL 232844, at *10, and *Ripley*, 67 F.3d at 557–58). The ALJ did not do so, but instead, as in *Thornhill* and *Fitzpatrick*, the ALJ adjusted the RFC determination for Bratu's mental limits:

> The limitations identified in the "paragraph B" criteria are not an [RFC] assessment but are used to rate the severity of mental impairments at steps two and three of the sequential evaluation process. The mental RFC assessment used at steps four and five of the sequential evaluation process requires a more detailed assessment of the areas of mental functioning. The following [RFC] assessment reflects the degree of limitation the undersigned found in the "paragraph B" mental function analysis… She can perform detailed but not complex tasks.

*Id.* at 17. Because the ALJ did not cite a medical opinion that supported her conclusion, the Court must conclude that she improperly used her lay interpretation of raw medical data to accommodate Bratu's severe depression. *See Williams*, 355 F. App'x at 832, & n.6. Reversal is thus proper, even if the ALJ was giving Bratu more limitations than otherwise would have been required. *See Thornhill*, 2015 WL 232844, at *10.

The ALJ "has a duty to develop the facts fully and fairly" when the record lacks "reports from qualified medical experts" explaining how a claimant's condition affects her ability to work, "no matter how 'small'" the effects may be. *Ripley*, 67 F.3d at 557 & n.27. Developing the record helps prevent judges from playing the role of doctor, for which they are generally ill-equipped. *See Frank v. Barnhart*, 326 F.3d 618, 622 (5th Cir. 2003). The Commissioner claims that "this evidence the ALJ discussed in narrative form supports the evaluation of the SAMCs' prior administrative findings and the ALJ's ultimate finding that [Bratu] can 'perform detailed but not

10

complex tasks.'" ECF No. 20 at 20. However, because the narrative is not medically supported to explain how Bratu's depression affects her ability to work, the Commissioner's argument falls short.

The ALJ's decision cites many instances supporting her finding. The ALJ could tell from Bratu's written statements that she could "follow written and spoken instructions well," that "[Bratu] had good judgment and insight," and that "[Bratu's] memory was normal. Tr. 16; ECF No. 20 at 20. All these notations are based on Bratu's self-reported comments. Tr. 16. There are no qualified medical opinions to support these subjective comments. So, while these comments may support the RFC, including that Bratu can perform "detailed but not complex tasks," this information does not satisfy the need for an expert medical opinion. *See* C.F.R. § 404.1513(a). And while the SAMCs' opinions, which the ALJ rejected in relevant part, addressed Bratu's ability to perform other jobs in the national economy and her overall disability status, there was no medical assessment to show how Bratu's mental impairment affected her ability to work. *See* Tr. 97, 111; *see also Winston v. Berryhill*, 755 F. App'x 395, 403 (5th Cir. 2018) (citing 20 C.F.R. § 404.1527(a)(2)) ("[T]he definition of a 'medical opinion' requires both an evaluation of symptoms and an expression of judgment regarding a claimant's capabilities and restrictions.").

Just like in *Ripley*, the Commissioner points to "other parts of the ALJ's decision" suggesting the "mental" RFC determination is consistent with a severe depression result. ECF No. 20 at 20-21; *see Ripley*, 67 F.3d at 557. The Commissioner argues "that other parts of an ALJ's decision can support the ALJ's findings regarding medical opinion evidence" ECF No. 20 at 20. The Commissioner is correct, but the ALJ's decision does not provides the "other" necessary medical opinion supporting such a limitation.

11

### 3. The error warrants reversal and remand.

Even though the ALJ erred in not seeking a medical opinion on the extent of Bratu's severe depression, the "harmless error rule" counsels against reversal unless the error caused harm. *See Mays v. Bowen*, 837 F.2d 1362, 1364 (5th Cir. 1988). Harmful error occurs where "the substantial rights of a party have been affected." *Id.* By contrast, harmless error "exists when it is inconceivable that a different administrative conclusion would have been reached even if the ALJ did not err." *Keel v. Saul,* 986 F.3d 551, 556 (5th Cir. 2021). The touchstone for assessing prejudice is whether errors "cast into doubt the existence of substantial evidence to support the ALJ's decision." *Morris*, 864 F.2d at 335. The error in developing this record was harmful enough to meet that standard. *Ripley*, 67 F.3d at 557 n.22 ("Prejudice can be established by showing that additional evidence would have been produced if the ALJ had fully developed the record, and that the additional evidence might have led to a different decision."). The absence of a medical opinion addressing Bratu's ability to work and the extent of her depression, casts doubt on the ALJ's decision. Without a medical opinion supporting the ALJ's decision, courts have held it is reversible error. *See Williams,* 355 F. App'x at 832; *Thornhill,* 2015 WL 232844, at *10-11. Accordingly, the error here warrants reversal and remand.

## IV. CONCLUSION

Because the Court can decide this case without addressing Plaintiff's claim of a constitutional error, the Court declines to address that issue. Substantial evidence in the record does not support the ALJ's findings, and the undersigned thus **RECOMMENDS** that Judge O'Connor **REVERSE** and **REMAND** this action for further administrative proceedings.

A copy of these findings, conclusions, and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of these findings, conclusions,

and recommendation must file specific written objections within fourteen days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(2). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions, and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996) (en banc).

       **SIGNED** on September 19, 2022.

                                                                               Hal R. Ray, Jr.
                                                                       UNITED STATES MAGISTRATE JUDGE